U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Nov 09 - 2021**

John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**GALO G.**,

                              **Plaintiff**,

          v.                                  3:20-CV-1011 (FJS)

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant**.

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **OLINSKY LAW GROUP**<br>250 South Clinton Street<br>Suite 210<br>Syracuse, New York 13202<br>*Attorneys for Plaintiff* | **HOWARD D. OLINSKY, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203<br>*Attorneys for Defendant* | **RAMI M. VANEGAS, SAUSA** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Galo G. brought this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for benefits. *See generally* Dkt. Nos. 1, 15. Pending before the Court are the parties' cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 15, 20.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff applied for benefits on April 25, 2018, alleging disability as of April 1, 2010. *See* Dkt. No. 12, Administrative Record ("AR") at 19.[1,2] Plaintiff filed a timely request for a hearing on August 24, 2018. *See id.* at 122-123. A hearing was held on August 9, 2019, before Administrative Law Judge Jeremy G. Eldred (the "ALJ") in Binghamton, New York. *See id.* at 44-72. Plaintiff's attorney, Mr. Bruce Entelisano, represented him at the hearing; and a vocational expert, Mr. Josiah L. Pearson, testified. *See id.* at 46.

On September 12, 2019, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record…"

> 1) Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2020."
>
> 2) Plaintiff "engaged in substantial gainful activity during the following periods: April 1, 2010 through October 31, 2011."
>
> 3) Plaintiff "has the following 'severe' impairments: coronary artery disease; obstructive sleep apnea; type two diabetes mellitus; obesity; major depression; anxiety disorder; and panic disorder."
>
> 4) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one

---

[1] All references to page numbers of documents in the Administrative Record are to the page numbers that the Court's ECF system generates, which appear in the top right corner of those pages.

[2] There appears to be a discrepancy between the date that the ALJ indicated that Plaintiff filed his application for disability insurance and supplemental security income benefits and the dates on those applications, which were signed April 11, 2018, and stamped May 7, 2018. *See* AR at 180, 184, 185, 193. However, this discrepancy does not impact the Court's decision in this case.

       of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1."

5) Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except he can perform only simple and routine tasks; can make only simple work-related decisions; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately deal with ordinary changes in a simple unskilled occupation."

6) Plaintiff "is unable to perform any past relevant work."

7) Plaintiff "was born on April 5, 1973 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49."

8) Plaintiff "has a limited education and is able to communicate in English."

9) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."

10) "Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."

11) Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of this decision."

*See* AR at 21-36 (citations omitted).

       The ALJ's decision became the Commissioner's final decision on June 25, 2020, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 5. Plaintiff then commenced this action on August 28, 2020, filing a supporting brief on April 20, 2021. *See* Dkt. Nos. 1, 15. Defendant filed a responding brief on August 5, 2021.

*See* Dkt. No. 20.  In support of his motion, Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is unsupported by substantial evidence because the ALJ failed to properly address certain medical opinions, including those of Allan Fernandez, M.D. and Jennifer Campoli, L.M.S.W.  *See generally* Dkt. No. 15 at 9-17.

### III. DISCUSSION

**A.  Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it.  *See* 42 U.S.C. § 405(g).  The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'"  *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).  In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act.  The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is currently engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if he cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B.  The ALJ's treatment of Dr. Fernandez's opinions**

Plaintiff contends that the ALJ failed to properly evaluate Dr. Fernandez's opinions when he found them "unpersuasive" and "not consistent with the record as a whole" because the medical record actually contained no evidence that is inconsistent with his opinions. *See* Dkt. No. 15 at

9-14. Plaintiff also asserts that the ALJ failed to provide any rationale from Dr. Fernandez's own records that would tend to discount his opinions. *See id.* at 11. To support his position, Plaintiff points out that Dr. Fernandez filled out two separate physical impairment questionnaires, which both found that Plaintiff would be unable to sustain the ability to sit, stand, or walk for a total of an eight-hour workday. *See id.* (citing AR at 323, 557). Additionally, Plaintiff notes that Gilbert Jenouri, M.D.'s evaluation – on which the ALJ relied – bolsters Dr. Fernandez's opinion because Dr. Jenouri opined that Plaintiff's cane use was necessary to assist with his gait and that he would have moderate limitations with walking, standing for long periods, bending, stair climbing, lifting, and carrying. *See id.* Plaintiff further asserts that Dr. Jenouri's examination found that Plaintiff was positive bilaterally when conducting the straight leg raise test, and he suffered from decreased sensation to touch, both of which further support Dr. Fernandez's opinions. *See id.* Plaintiff also contends that Dr. Fernandez has treated him since September 1, 2017, and he had access to Plaintiff's mental health records, in which Plaintiff consistently indicated that he was suffering from difficulty ambulating and severe pain in his back. *See id.* at 12. Plaintiff therefore argues that the ALJ did not provide a legitimate discussion regarding the consistency of the record concerning Dr. Fernandez's opinion. *See id.* at 12-14.

    Dr. Fernandez physically assessed Plaintiff twice in May 2018. *See* AR at 323-324; 557-559. In his first assessment, Dr. Fernandez diagnosed Plaintiff with degenerative disc disease and indicated that Plaintiff frequently suffers from symptoms that are severe enough to interfere with the attention and concentration required to perform simple work-related tasks. *See id.* at 323. Dr. Fernandez further opined that Plaintiff would need to recline or lie down more than typical in an eight-hour workday, that he could walk less than one quarter of a block without

significant pain, that he could sit or stand for three or four hours in a typical eight-hour workday, and that he could stand or walk for less than 30 minutes. *See id.* Dr. Fernandez indicated that Plaintiff would need to take two or three unscheduled breaks during an eight-hour workday, that Plaintiff could never lift more than ten pounds, that he could occasionally lift less than ten pounds, and that he would have limitations doing repetitive reaching, handling, or fingering. *See id.* Dr. Fernandez finally opined that he believed that Plaintiff would be absent from work as a result of his impairments more than four times per month. *See id.* at 324.

In his second physical assessment of Plaintiff, Dr. Fernandez reported that he had been treating Plaintiff since September 2017; and he diagnosed Plaintiff with M54.5, low back pain, and M51.36, other intervertebral disc degeneration, with a poor prognosis. *See id.* at 557. Dr. Fernandez indicated that Plaintiff's symptoms were often severe enough to interfere with the attention and concentration required to perform simple work-related tasks and that Plaintiff would need to recline or lie down in excess of the typical break times in an eight-hour workday. *See id.* Dr. Fernandez further concluded that Plaintiff could walk less than half a block without rest or significant pain, that Plaintiff could sit for ten minutes and walk or stand for ten minutes at one time, and that Plaintiff could sit, stand, or walk, for no more than two hours in an eight-hour workday. *See id.* Dr. Fernandez noted that Plaintiff would need a job that permitted shifting positions at will from sitting, standing, or walking and would often need to take unscheduled breaks during the workday. *See id.*

In the mental impairment questionnaire that Dr. Fernandez completed at the time of the second physical assessment, he reported that Plaintiff had slight impairments with understanding and memory and sustained concentration and persistence. *See id.* at 558. Dr. Fernandez also indicated that Plaintiff had moderate impairments in responding appropriately to

changes in the work setting and in his ability to set realistic goals or make plans independently of others. *See id.* at 559. He also found that Plaintiff had slight impairments in his ability to be aware of normal hazards and take appropriate precautions and in his ability to travel in unfamiliar places or use public transportation. *See id.* Dr. Fernandez left blank the sections prompting the medical provider to describe the medical and clinical findings that supported his assessment. *See id.* at 558-59.

According to the new regulations, applicable to claims filed after March 27, 2017, "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *Andrew G. v. Comm'r of Soc. Sec.*, 3:19-CV-0942 (ML), 2020 WL 5848776, *5 (N.D.N.Y. Oct. 1, 2020) (Lovric, M.J.) (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017)); (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "Instead, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).

"The new regulations require that an ALJ 'explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings [.]'" *Howard D. v. Saul*, No. 5:19-cv-01615 (BKS), 2021 WL 1152834, *12 (quoting 20 C.F.R. § 404.1520c(b)(2)) (N.D.N.Y. Mar. 26, 2021) (Sannes, J.). "With respect to 'supportability,' the new regulations provide that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.'" *Warren I. v.*

*Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, *4 (N.D.N.Y. Mar. 8, 2021) (Baxter, M.J.) (quoting [20 C.F.R.] §§ 404.1520c(c)(1), 416.920c(c)(1)).  "The regulations provide that with respect to 'consistency,' '[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.'"  *Id.* (quoting [20 C.F.R.] §§ 404.1520c(c)(2), 416.920c(c)(2)).

In this case, the ALJ concluded that Dr. Fernandez's findings were "unpersuasive."  *See* AR at 33.  The ALJ applied the supportability factor to Dr. Fernandez's conclusions by asserting that "Dr. Fernandez did not support his opinions with a detailed or convincing rationale[.]"  *See id.*  With respect to Dr. Fernandez's assessment of Plaintiff's mental limitations, the ALJ similarly concluded that his assessment was "not supported by any rationale."  *See id.* at 34.  To support these determinations, the ALJ pointed to various objective tests that other physicians, such as Dr. Jenouri, had applied to support their positions.  *See id.*  For example, the ALJ indicated that, in Dr. Jenouri's examination of Plaintiff, objective tests revealed that that Plaintiff's gait was antalgic, he walked on his heels and toes with difficulty, his joints were stable and non-tender with no redness, health swelling, or effusion, and he did not have cyanosis, clubbing, or edema.  *See id.*  Additionally, the ALJ noted that Dr. Jenouri found upon examination that Plaintiff had some reduced range of motion and decreased sensation to fine touch in the right lower extremity, that he had muscle atrophy in that extremity, but that his hand and finger dexterity were intact, and he had full strength bilaterally.  *See id.*  However, as the ALJ noted, Dr. Fernandez did not rely on such tests in coming to his conclusions, nor did he reference the medical or clinical findings on which he based his opinions.  *See id.* at 33, 323, 557-58.

Regarding consistency, the ALJ asserted that Dr. Fernandez's "conclusions regarding [Plaintiff]'s physical limitations are not consistent with the record as a whole, including the evidence . . . regarding the claimant's activities of daily living." *See id.* at 33. With respect to Plaintiff's activities of daily living, the ALJ considered Plaintiff's testimony that he normally got around by taking the bus with a friend, that he walked several blocks to get to the hearing – which took 15 minutes, although he had to stop four to five times – that he lived alone, could prepare frozen food for meals, did his own laundry, occasionally swept his floor, and bought his own groceries every month. *See id.* at 31. The ALJ further considered evidence that Plaintiff showered regularly, walked for 30 minutes, cooked, watched television, shopped once per month by phone or computer, went to medical appointments, could handle a savings account and count change, could follow written instructions, talked to several other people at his residence, used a gym, went to the library, went to see his daughter for a weekend, and occasionally went to a friend's house. *See id.*

Notably, the ALJ found that Dr. Fernandez's opinion with respect to Plaintiff's mental impairments was, in fact, "consistent with other evidence in the record, and provides further support for a conclusion that [Plaintiff] is capable of performing simple work that requires no more than occasional interaction with others." *See id.* at 34. Specifically, the ALJ pointed to Dr. Fernandez's treatment notes, in which he indicated that Plaintiff had a depressed, tearful mood, suffered from recurrent, severe depression with psychosis, but was generally cooperative and had a coherent thought process. *See id.* at 34, 374, 382, 387. The ALJ thus concluded that Plaintiff's activities of daily living, combined with the results of his objective tests, medical assessments, and testimony, resulted in an RFC limiting him to performing sedentary work. *See id.* at 34.

Based on the foregoing, the Court concludes that the ALJ applied the relevant factors and thoroughly considered the supportability and consistency of Dr. Fernandez's medical opinions with respect to the record as a whole. Thus, the Court holds that the ALJ did not err in finding Dr. Fernandez's medical opinions "unpersuasive" when coming to his RFC determination.

## C. The ALJ's treatment of Ms. Campoli's opinion

Plaintiff next contends that the ALJ's RFC determination lacks substantial evidence because the ALJ improperly concluded that Ms. Campoli's medical opinions were "unpersuasive" and inconsistent with the medical record. *See* Dkt. No. 15 at 14-17. According to Plaintiff, the ALJ did not consider that Amanda Slowik, Psy.D's opinion that Plaintiff would have "moderate" to "marked" limitations in his ability to sustain concentration was highly consistent with Ms. Campoli's opinions. *See id.* at 15. Furthermore, Plaintiff argues that his treating nurse practitioner, Hugh McKenzie, N.P., came to the same or similar findings as Ms. Campoli. *See id.* Plaintiff asserts that, despite this evidence supporting Ms. Campoli's opinions, the ALJ found it unpersuasive without legitimate reasons and while failing to weigh any of the relevant medical opinions. *See id.* at 16. Plaintiff contends that he is not asking the Court to reweigh the evidence but to have the ALJ explain why the probative evidence did not provide adequate support for Ms. Campoli's limitations. *See id.*

Ms. Campoli completed two mental impairment questionnaires, in which she indicated that she had first started examining Plaintiff in July 2018, and that he had been a patient with her agency since 2017. *See* AR at 527, 573. In the first questionnaire, completed in May 2019, Ms. Campoli indicated that Plaintiff had slight limitations in understanding and memory, in his ability to carry out simple and detailed instructions, concentrate for extended periods, perform activities within a schedule, and sustain an ordinary routine without special supervision. *See id.*

at 524.  However, Ms. Campoli determined that Plaintiff had marked limitations in working in coordination with others, making simple work-related decisions, and completing a normal workday and workweek without interruptions from psychologically based symptoms.  *See id.* at 525.  She further concluded that Plaintiff had extreme limitations in performing at a consistent pace and would be absent more than four times per month.  *See id.*  To support her assessment, Ms. Campoli indicated that Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"), major depressive disorder, and an unspecified mood disorder.  *See id.*  She noted that Plaintiff "sleeps approximately 20+ hours per day," is "heavily medicated" by N.P. McKenzie, "but still suffers from severe depression."  *See id.*  Ms. Campoli also indicated that Plaintiff had marked limitations in all social interaction, noting that Plaintiff had a history of trauma in addition to his PTSD, that he isolated in his apartment rather than interacts with the public, had panic attacks when in public places, and did not trust people.  *See id.*  With respect to Plaintiff's ability to adapt in the workplace, Ms. Campoli found that he had moderate limitations, except for a marked limitation in the ability to travel in unfamiliar places or use public transportation.  *See id.* at 526.  To support that conclusion, she noted that Plaintiff's major depressive disorder made him unable to be employed, think clearly, and get out of bed at times.  *See id.*

    Ms. Campoli completed a second mental impairment questionnaire in July 2019, in which she indicated that Plaintiff had moderate limitations in his ability to understand and remember instructions, whether simple or detailed, and in making simple work-related decisions.  *See id.* at 570-571.  She also noted that Plaintiff had marked limitations in remembering locations and work-like procedures and in sustained concentration and persistence.  *See id.*  To support these findings, Ms. Campoli indicated that Plaintiff had diagnosed major depressive disorder that was recurrent, severe, and "significantly impairs him."  *See id.*  She also determined that Plaintiff

had moderate limitations in all social interactions, except for interacting appropriately with the general public, for which he had a marked limitation. *See id.* Ms. Campoli noted that Plaintiff's PTSD and major depressive disorder impacted his social interactions. *See id.* She also found that Plaintiff would have more than four absences every month, which is an extreme impairment. *See id.* With respect to Plaintiff's ability to adapt, Ms. Campoli found that Plaintiff had moderate impairments in responding appropriately to changes in the work setting and in awareness to normal hazards, marked limitations in his ability to set realistic goals or make plans independently of others, and extreme limitations in traveling to unfamiliar places or using public transportation. *See id.* at 572. To support that assessment, Ms. Campoli pointed to Plaintiff's "[s]evere PTSD that prohibits him from going places or interacting w[ith] strangers." *See id.*

   In his decision, the ALJ found Ms. Campoli's assessments "unpersuasive," concluding that the information she provided to support her opinions "consists of [Plaintiff]'s subjective complaints, as opposed to specific mental status examination findings." *See id.* at 34. As discussed above, a medical source opinion is more supported the more it relies on relevant objective medical evidence and explanations. *See Warren I*, 2021 WL 860506, at *4. "Subjective complaints can be supported by objective medical evidence and findings; however, subjective complaints, by their very nature, cannot constitute objective medical evidence." *Dailey v. Comm'r of Soc. Sec.*, No. 5:14-CV-1518 (GTS/WBC), 2016 WL 922261, *5 (N.D.N.Y. Feb. 18, 2016). The ALJ thus identified the supportability factor and explained that Ms. Campoli's opinions were unsupported because they did not rely on objective medical evidence.

With respect to consistency, the ALJ concluded that Ms. Campoli's opinions were inconsistent with the opinions of Drs. E. Kamin, M.D., Slowik, and Fernandez, as well as Plaintiff's various activities of daily living. *See id.* The ALJ concluded that Plaintiff's mental status examinations, as provided in his medical records, consistently revealed that he exhibited a depressed mood, but otherwise he generally had a cooperative manner, an appropriate affect, coherent and appropriate thoughts, and exhibited no delusional thinking. *See id.* To support this conclusion, the ALJ pointed to Plaintiff's treatment records with Dr. Fernandez, discussed above, *see id.* at 374, 382, 387, and his treatment records with N.P. McKenzie, *see id.* at 398, 416, 426, 445, 457, 462, 481, 486-487, 565-566. The ALJ thus used this medical evidence to show that Plaintiff's mental impairments, as described by his treating physician and nurse practitioner upon examination, were inconsistent with Ms. Campoli's conclusions as to how Plaintiff's PTSD, major depression, and mood disorders affected his ability to work. Furthermore, contrary to Plaintiff's contentions, the ALJ relied on Drs. Kamin's and Slowik's opinions, which were inconsistent with Ms. Campoli's opinion, because they concluded that Plaintiff could socialize adequately with others, take care of routine chores and shopping, and perform simple work. *See id.* at 33-34. The ALJ also pointed to Plaintiff's activities of daily living, as discussed above, which contradicted Ms. Campoli's assessment that Plaintiff slept more than 20 hours per day and did not leave his home. *See id.* at 31. Each of these pieces of evidence were therefore inconsistent with Ms. Campoli's findings. Thus, the Court finds that the ALJ did not err in concluding that Ms. Campoli's opinions were unpersuasive.

In sum, the Court finds that the ALJ adequately considered the relevant factors, particularly supportability and consistency, when finding Dr. Fernandez's and Ms. Campoli's opinions unpersuasive. Having properly addressed their opinions in coming to his RFC determination,

the Court further holds that there is substantial evidence in the record to support the ALJ's determination.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 15, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 20, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: November 9, 2021
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge